WALLACE *v.* FORDYCE LUMBER Co.

5-2531                                               354 S. W. 2d 271

Opinion delivered February 26, 1962.

*McMillan & McMillan,* for appellant.

*Gaughan & Laney* and *Thomas E. Sparks,* for appellee.

NEILL BOHLINGER, Associate Justice.   The appellee brought this action in the Dallas Chancery Court alleging that it was the owner of the west half and southeast quarter of section 8, township 7 south, range 14 west; that the appellant was the owner of the northeast quarter of said section [except 10 acres which are not in dispute here]; that appellant was threatening to and about to trespass upon the lands of the appellee and cut

timber thereon, and asked a restraining order which was granted.

Thereafter the cause proceeded to trial and the chancellor found the issues for the appellee and established the line between their properties and enjoined the appellant from cutting over the line. From that judgment comes this appeal.

Counsel have presented us with a well-tried and excellently briefed lawsuit with a record that brings up every detail and the exhibits thereto are complete.

The appellant states that the sole issue in this case is the question as to the legal requirements for the establishment of government corners or of government lines where all of the original monuments, witness trees and accessories are missing. The appellee contends that the only issue is that the finding of the chancellor is supported by competent evidence and the finding is not against the preponderance thereof. The factual situation in this township is not altogether novel.

The nearest government corner to the involved land is the quarter section corner between sections 16 and 17 lying south of the land in controversy. The original government notes of the quarter corner between sections 16 and 17 list as monuments a brook 50 links wide running southeast, a Gum tree 10 inches in diameter, and a Holly tree 8 inches in diameter.

A survey was begun at the quarter corner of 16 and 17 where the surveyor found, of the monuments listed in the government notes, the stump-hole of the Gum tree which the original surveyor had noted, the brook, and the Holly tree. The question of the Holly tree being the one listed in the government notes is in dispute. One expert claimed that his borings indicated that the tree was not old enough to have been the original tree and another expert claimed that it was. The chancellor might have found either way on that point but he held that the Holly tree was the Holly tree from which that particular corner takes its name. Therefore there is ample

testimony for the chancellor to have found as he did, that the corner located between 16 and 17 and designated as the Holly Tree Corner is the true government corner.

Much testimony has been taken but we are impressed, as the chancellor no doubt was, with the direct approach of the surveyors who, accepting the Holly Tree Corner, ran north 80 chains. This measurement of 80 chains is the proper distance to place us at the quarter corner between sections 8 and 9 and should mark the southeast corner of appellant's land.

At that point a surveyor, who was running the lines for appellant's predecessor in title, found a pine knot, evidently the marking of a corner. While there is a dispute in the testimony, there is testimony to the effect that the then owner of the land of appellant deeded the pulpwood on this land and showed the purchaser this particular pine knot corner and designated it as the southeast corner of his holdings. The surveyor testified that he began right there and ran a line west 20 chains and 18 links to a corner that was up and marked by a pine knot and an old blaze line and then 20 chains and 18 links to another pine knot. At this point he found established a corner that was the center of section 8. From this center of section 8 the surveyor went 40 chains to the quarter corner of 5 and 8 where there was an old blaze line and the point marked by a pine knot.

These two lines found, as established by the chancellor, are the only boundaries with which we are concerned in this case. They mark the boundaries between the lands of appellant and appellee. With the north and east lines of appellant's property we are not concerned. As far as we know, no controversy exists between the appellant and his adjoining landowners on the north and east and the question as to whether or not the Ash tree line on the north is the proper northern boundary we do not decide here.

It is earnestly insisted by the appellant that there is a lack of government corners properly monumented in

section 8 and we are asked to follow the Government Manual of Surveying Instructions as it pertains to that state of facts. If the land involved in this case were still government owned we would readily hold that the manual is controlling. It is, as its name suggests, a manual for the guidance of the employees of land management and its purpose is set forth on page 2 of the manual as follows:

"The Manual is for the guidance of the employees of the Bureau of Land Management. To all others this surveying practice should be regarded as advisory, with no attempt to interpret State law respecting the survey of private property."

Therefore, we take the manual to be advisory only. Since there do not appear to be any existing monuments at this quarter corner, resort should have been and was had to section 355 of the manual at page 285.

"An obliterated corner is one at whose point there are no remaining traces of the monument, or its accessories, but whose location has been perpetuated, or the point for which may be recovered beyond reasonable doubt, by the acts and testimony of the interested landowners, competent surveyors, or other qualified local authorities, or witnesses, or by some acceptable record evidence."

There was, as the court found, not only the evidence of the pine knot markers at the proper spot where the monuments showed they should have been, but there was an old blaze trail that signifies the acceptance of the corner and the line and the evidence, though disputed, that a former landowner had designated the exact spot found by the surveyor as the southeast corner of appellant's land.

In an effort to find evidence of government corners it should be borne in mind that more than thirteen decades and a lustrum have passed since the government survey was made and the corners established and the field notes made and filed. In the years that have passed

between those events, armies have moved and a war has been fought in our section and the ravages of time and decay have also taken a toll of monuments which at best could be considered only transitory in a section where an outcropping of rock or other permanent material would be novel indeed.

It is entirely possible that over the generations past people have, as best they could with the crude methods at hand, located corners and lines from government corners that were known. Those corners may now be obliterated and difficult to ascertain but on the strength of those determinations of positions, forests have been leveled, fields have been cleared and tilled, homes, villages and cities have been erected and if there was error in measurement or location of any of these things it has persisted through a long period of time. That error, if error existed, may be reflected in lines of property long distances from the original markings but over the years they have been accepted and the court should weigh well the confusion and mischief that might be wrought by the change of an accepted line.

Before that line which has been accepted through the long years is changed, it should be made to appear that the wrong, the injustice, the inequity of the situation is glaring and the change is appreciable, and the error easily traced to its source.

In some instances judgments and court decrees, as well as accepted usage, go back to corners established by our forebearers on the basis of the best knowledge they had obtainable and we rather think that the logic which brought forth the ancient maxim STARE DECISIS, ET NON QUIETA MOVERE, which has done so much to stabilize the decisions of the courts, might well be applicable as we contemplate the effect of the change of long established lines. In these circumstances we prefer to stand by precedent and not disturb settled points.

We refrain from burdening this opinion with a reiteration of our many holdings on decisions of the chancellors. The findings of the chancellor will not be disturbed unless it is shown that they are contrary to the preponderance of the evidence. No such showing is here made. The chancellor's conclusions are sound and the decree should be affirmed.

It is so ordered.